John R. BERGER, Sidney Sonduck, and Herman Sonduck, Applicants, Appellants Below and Appellees,

v.

COUNTY OF MORTON, a Political Subdivision of the State of North Dakota, Respondent Below and Respondent,

and

Thoren Kilen, Mary Kilen, Loretta Koch, David Koch, D. J. Hoffman, Mary L. Hoffman, Harry D. Kline, Geraldine M. Kline, Norman Stein, Darlene Stein, Edna Assel, and Judy Loehrke, Intervenors Below and Appellants.

Civ. No. 9478.

Supreme Court of North Dakota.

Feb. 1, 1979.

Lester J. Schirado, Mandan, for applicants, appellants below, and appellees.

Richard L. Schnell, State's Atty., Morton County; no appearance.

Jos. A. Vogel, Jr., Mandan, for intervenors below and appellants.

VANDE WALLE, Justice.

Thoren Kilen, Mary Kilen, et al. ("landowners") appeal from the district court's judgment that denied an application made by John R. Berger, Sidney Sonduck, and Herman Sonduck ("developers") for the filing of a subdivision plat in rural Morton County and remanded the application for further action to the Morton County Planning Commission.[1] We affirm the judgment of the district court.

The developers own land in Morton County approximately five miles west of Mandan, North Dakota, in an area known as "Monte's Rancheros." Four subdivisions have already been developed in Monte's Rancheros. To establish a fifth subdivision in the area the developers sought the approval of the Morton County Planning Commission. They presented their proposed subdivision plat to the Planning Commission and appeared before it in support thereof several times. On August 25, 1977, the Planning Commission delayed further consideration of the proposed fifth subdivision until the new Morton County Comprehensive Land Use Plan was adopted.

On September 7, 1977, the developers presented their request for approval of their subdivision to the Morton County Board of Commissioners. The Board of Commissioners approved the subdivision at that time. On September 15, 1977, however, the Board of County Commissioners rescinded its approval of the subdivision and referred the matter back to the Planning Commission.

On September 29, 1977, the developers again requested that the Planning Commission approve their subdivision but, once again, the Planning Commission refused. On October 5, 1977, the developers returned to the Board of County Commissioners with their request, and on October 12, 1977, the Board of County Commissioners denied the filing of the subdivision plat until a solution could be reached to what it felt were certain water problems. On November 1, 1977, again appearing before the Board of County Commissioners, the developers renewed their request for approval of the subdivision plat. As before, the Board of County Commissioners denied the request.

The developers appealed the Board of County Commissioners' decision denying approval of their subdivision plat to the district court, under Sections 11–11–39 and 11–33–12, N.D.C.C. The landowners, who had participated through their attorney in some of the proceedings before the Board of County Commissioners, moved to intervene as defendants in the appeal. The district court granted the landowners' motion for intervention.

The district court tried the developers' appeal de novo pursuant to Section 11–11–43, N.D.C.C. The district court found that an adequate water supply and fire, police, and other services commensurate with those "of any rural citizen" were available to the subdivision and that the subdivision was "not so far in advance of the needs of [Morton] County that it should be denied." Yet, because some of the lots within the proposed subdivision failed to comply with the frontage and minimum footage requirements of the Morton County Zoning Resolution, published as "1967 Zoning Regulations, Morton County, Mandan, North Dakota," and because the developers "failed in their burden of proof to show why a Hardship Variance should be granted," the court denied the filing of the plat for the fifth subdivision in Monte's Rancheros. The landowners appeal the district court's decision to this court.

Responding to the district court's decision, the developers redesigned the proposed subdivision plat in an effort to comply with the Morton County Zoning Resolution. Before either the Planning Commission or the Board of County Commissioners took action on the redesigned proposal, the district court, upon the landowners' application, stayed execution of its judgment.

The landowners' appeal presents two issues:

---

1. The County of Morton has chosen neither to participate in oral argument nor to submit a brief in this case.

1. Did the disapproval of the proposed subdivision plat by the Planning Commission preclude the Board of County Commissioners and the district court from considering whether or not to approve it; and

2. Did the district court err in its application of the criteria within the Morton County Zoning Resolution for the approval of a proposed subdivision plat?

I

█ Relying upon Article 22 of the Zoning Resolution, the landowners argue that the Planning Commission's disapproval of the developers' preliminary plat precluded the Board of County Commissioners, and ultimately the district court, from considering whether or not to file the plat. Because Article 22, Morton County Zoning Resolution, never expressly states that the Board of County Commissioners may consider a plat disapproved by the Planning Commission, the landowners assert that the Board of County Commissioners had no authority to hear the developers' request. Moreover, the Board of County Commissioners' lack of authority, they argue, deprives the district court of its appellate authority under Sections 11–11–39 and 11–33–12, N.D.C.C. We reject the landowners' argument.

Article 22, Section 3, paragraph 1, Morton County Zoning Resolution, requires one desiring to subdivide land in Morton County to apply in writing to the Planning Commission for tentative approval of the preliminary plat. Article 22, Section 3, paragraph 3, Morton County Zoning Resolution, authorizes the Planning Commission to "approve, approve conditionally, or disapprove such preliminary plat." The landowners

point out that nowhere does Article 22, Morton County Zoning Resolution, describe the procedure that a potential subdivider must follow to gain further consideration of his preliminary plat, should it be initially disapproved by the Planning Commission.

Next, the landowners direct us to Article 22, Section 11, paragraph 1, Morton County Zoning Resolution, which provides:

"1. SEPARATE HEARINGS. Any person aggrieved by any provision of a resolution adopted hereunder, or an amendment thereto, may, within sixty (60) days after the taking effect of such provision, petition for a separate hearing thereon before the Board of County Commissioners. The petition shall be in writing and shall specify in detail the ground of the objections. The petition shall be filed with the County Auditor. A hearing thereon shall be held by the Board no sooner than ten (10) days, nor longer than forty (40) days, after the filing of the petition with the County Auditor who shall notify the petitioner of the time and place of the hearing. At this hearing the Board of County Commissioners shall consider the matter complained of and shall notify the petitioner, by registered mail, what action, if any, it purposes to take thereon. The provisions of this section shall not operate to curtail or exclude the exercise of any rights or powers of the Board of County Commissioners or any citizen."

This provision is similar to Section 11–33–10, N.D.C.C.[2] The landowners argue that

---

**2.** Section 11–33–10, N.D.C.C., provides:

"Any person aggrieved by any provision of a resolution adopted hereunder, or any amendment thereto may, within thirty days after the first publication of such resolution or amendment, petition for a separate hearing thereon before the board of county commissioners. The petition shall be in writing and shall specify in detail the ground of the objections. The petition shall be filed with the county auditor. A hearing thereon shall be held by the board no sooner than seven days, nor later than thirty days after the filing of the petition with the county auditor,

who shall notify the petitioner of the time and place of the hearing. At this hearing the board of county commissioners shall consider the matter complained of and shall notify the petitioner, by registered or certified mail, what action, if any, it proposes to take thereon. The board of county commissioners, at their next regular meeting, shall either rescind or affirm such resolution or amendment. The provisions of this section shall not operate to curtail or exclude the exercise of any other rights or powers of the board of county commissioners or any citizen."

these provisions are inapplicable to Planning Commission recommendations such as the disapproval of a preliminary plat. We disagree.

One of the powers necessarily referred to in the last sentence of Article 22, Section 11, paragraph 1, Morton County Zoning Resolution, and Section 11–33–10, N.D.C.C., is the extensive zoning power that Chapter 11–33, N.D.C.C., accords to the Board of County Commissioners. If the Board of County Commissioners desires to avail itself of this zoning power, it must establish a Planning Commission. Sec. 11–33–04, N.D.C.C. Moreover, the Board of County Commissioners must empower the Planning Commission "to recommend the boundaries of the various county zoning districts and appropriate regulations and restrictions to be established therein." Sec. 11–33–04, N.D.C.C. But if, as the developers would have us believe, disapproval by the Planning Commission debarred consideration of a plat by the Board of County Commissioners, the Planning Commission's negative recommendation would be insulated from attack by parties adversely affected and even from reconsideration by the Board of County Commissioners itself. Contrary to the express commands of Article 22, Section 11, paragraph 1, Morton County Zoning Resolution, and Section 11–33–10, N.D.C.C., this result would surely "curtail or exclude" the exercise by the Board of County Commissioners of its zoning power.

As we recognized in *Schroeder v. Burleigh County Board of Commissioners*, 252 N.W.2d 893, 898 (N.D.1977), "the County Board is the legislative body ultimately charged with deciding the request for rezoning, and it need not accept the recommendation of the Planning Commission." The Morton County Zoning Resolution does not and, in any event, cannot prevent the Board of County Commissioners from reconsidering the filing of a plat because the Board of County Commissioners, not the Planning Commission, is "ultimately

charged" with this decision. While Article 22, Section 11, paragraph 1, Morton County Zoning Resolution, provides a mechanism through which persons aggrieved by zoning resolutions or amendments thereto may present their objections to the Board ·of County Commissioners, this provision expressly refrains from limiting the Board of County Commissioners' exercise of any of its other powers. Hence, the Board of County Commissioners properly considered the developers' plat, and, pursuant to Sections 11–11–39 and 11–33–12, N.D.C.C., the developers properly appealed the Board of County Commissioners' decision to the district court.

■ At oral argument counsel for the landowners seemed to urge that the district court may determine only whether the County Planning Commission, and subsequently the Board of County Commissioners, abused their discretion in refusing to approve the preliminary plat. The district court held that under the applicable statutes it had the authority, on appeal from the decision of the Board of County Commissioners, to hear the matter anew.

We have already concluded that the Board of County Commissioners may consider the request for approval of the plat if the Planning Commission has failed to approve it. The right of appeal from the decision of the Board of County Commissioners to approve or disapprove the plat under Chapter 11–33, N.D.C.C., regulating county zoning, is governed by statute. Section 11–33–12, N.D.C.C., provides:

> "Any person, or persons, jointly or severally, aggrieved by a decision of the board of county commissioners under this chapter, may appeal to the district court in the manner provided in chapter 11–11."

It is apparent to us that the decision of the Board of County Commissioners in this instance is a decision made under the provi-

---

The differences between this provision as currently codified (and quoted above) and as codified prior to its amendment in 1977 are unimportant for purposes of this appeal.

sions of Chapter 11–33, N.D.C.C. Because the appeal to the district court from the decision of the Board of County Commissioners is governed by Chapter 11–11, N.D.C.C., we must consider the provisions of that chapter to determine the district court's scope of review. Section 11–11–43, N.D.C.C., provides:

"All appeals taken from decisions of a board of county commissioners shall be docketed as other causes pending in the district court *and shall be heard and determined de novo.*" [Emphasis supplied.]

Because Section 11–11–43, N.D.C.C., requires the appeal to be heard de novo, we cannot agree with the landowners that the district court's scope of review in this instance is limited to determining only whether the Board of County Commissioners has abused its discretion. This court noted in *Merchant v. Richland County Water Management District, Board of Commissioners*, 270 N.W.2d 801 (N.D.1978), that the same or similar language providing for a trial de novo has been repeatedly used by our Legislature in describing the scope of review to be made by the trial court when there is an appeal of an executive or administrative decision. Among the examples of this language in statutes granting a right of appeal cited in *Merchant* was Section 11–11–43, N.D.C.C. We noted that this requirement is not a "unique aberration." 270 N.W.2d at 804.[3]

The district court heard testimony, received exhibits, and made its decision as it would in any trial to the court.[4] The court reached its decision without regard to the findings and decision of the Board of County Commissioners. The court was required to follow such procedure by Section 11–33–12, N.D.C.C., and by Section 11–11–43, N.D.C.C., which is incorporated by reference into the appeal procedure under Section 11–33–12.

In *Olson v. Cass County*, 253 N.W.2d 179 (N.D.1977), this court cited with approval *Gold Street v. Newton*, 2 Dak. 149, 3 N.W. 329 (1879), and noted that the propriety of a decision of the Board of County Commissioners should be pursued by appeal under Section 11–11–39, N.D.C.C, and tried anew in accordance with the provisions of Section 11–11–43, N.D.C.C. We said:

"It is precisely this type of question, concerning the correctness and propriety of the decision, that is a proper matter for the direct appeal authorized by Section 11–11–39, N.D.C.C. The lower court found that the plaintiffs' grievances could have been fairly litigated on appeal, and we can find no basis for deciding otherwise. The statutory appeal is the method by which an aggrieved person can challenge the correctness of such a decision." 253 N.W.2d at 183.

The landowners, however, point to *Detlaff v. Board of County Commissioners of Ward County*, 136 N.W.2d 835 (N.D.1965), as sustaining their position that the district court had only the right to review the exercise of discretion by the Board of County Commissioners, and not the right to try the question anew. In that case certain landowners had petitioned for amendment of the county zoning resolution, but their petition was denied by the Planning Commission and the Board of County Commission-

---

3. In *Merchant*, we were asked to determine whether an appeal from an administrative agency heard by the district court de novo pursuant to Section 61–16–39, N.D.C.C., was unconstitutional because it usurped legislative authority granted to that governmental agency and improperly delegated such authority to the judiciary. The question was certified to this court but we declined to answer because the question had not been passed upon and determined by the lower court and, further, because the answer would not have disposed of all the issues in the case. In the case at bar, the constitutional question has not been raised, ei-

ther at the trial level or in this court, and is not before us.

4. While some statutes provide that the trial de novo is to be upon the record, Section 11–11–39, N.D.C.C., makes no reference to a record. There was no complete record of the proceedings before the county agencies in this instance because neither the Planning Commission nor the Board of County Commissioners is an agency of record, and the proceedings before those agencies apparently were not transcribed. See, e. g., *Gold Street v. Newton*, 2 Dak. 149, 3 N.W. 329 (1879).

ers. Upon appeal to this court, the primary question considered was the constitutionality of the resolution. Upon petition for rehearing, however, this court indicated that a refusal to act on the petition, or a denial thereof, was within the sole discretionary powers of the Board of County Commissioners, was final, and was not subject to attack. 136 N.W.2d at 839.[5]

In examining the opinion on petition for rehearing in that case, we observe that the question presented to the court was whether "the action of the Ward County Commissioners in denying the petition [was] unreasonable, arbitrary, and discriminatory and therefore illegal." 136 N.W.2d at 839. In its discussion, the court did not consider Section 11–11–43, N.D.C.C. Furthermore, the issue before the court was not the preliminary approval of a plat but rather involved a petition to amend the basic zoning resolution. Thus, the court stated:

> "The statute, Chapter 11–33, N.D.C.C., delegates the power to the Board of County Commissioners, without restriction, to determine the questions of the initiation of proposals for zoning districts, or of changes therein, amendments thereto, or variances thereof." 136 N.W.2d at 839.

In making this statement the court relied upon *Gehrke v. Board of Commissioners of Divide County*, 58 N.D. 407, 226 N.W. 536 (1929), which involved action taken by the Board of County Commissioners to build a war memorial building at a site contrary to that desired by the plaintiffs in the action. In *Gehrke*, the plaintiffs filed a petition objecting to the Board of County Commissioners' action signed by more than 900 citizens and taxpayers. The petition was nothing more than an expression of popular will that the Board of County Commissioners could, within its discretion, disregard. It appears that, unlike the landowners in this case, the plaintiffs in *Gehrke* did not make a formal, statutorily authorized request for action by the Board of County

Commissioners. They could not, therefore, appeal the Board of County Commissioners' action, which was adverse to their petition, to the district court.

In the case before us, the petition was for approval of a subdivision plat under the Zoning Resolution in effect, and was not a petition for the adoption of a resolution nor for the amendment of an existing resolution. Hence, *Detlaff* may be distinguished on that ground as well as by the fact that the issue before the court in *Detlaff* did not specifically present the question of the scope of review by the district court on appeal from the decision of the Board of County Commissioners.

## II

■ Finally, the landowners contend that the trial court misconstrued the meaning of Article 22, Section 2, paragraph 3, Morton County Zoning Resolution, which provides, in part:

> "3. It will be the duty of the Planning Commission to discourage the subdividing of lands that are far in advance of the needs of the County; or that by their locations cannot be efficiently served by fire protection, police protection or other services;
> . . . "

The trial court concluded as a matter of law that,

> ". . . under the principle of ejusdem generis, the term 'or other services', when following 'fire protection and police protection' in the 1967 Morton County Zoning Regulations, includes only the basic needs for residential living in the particular area and does not include indoor or outdoor recreation facilities, commercial facilities, additional law enforcement for traffic control and property protection, or additional fire protection."

The landowners contend that the Planning Commission and the Board of County Commissioners may consider all possible

---

5. In denying the petition for rehearing, the court indicated that it had not believed it necessary to answer the question in view of its opinion upholding the constitutionality of the resolution.

services that might be needed in a subdivision and may reject a subdivision proposal that does not provide those services. This court has held that the principle of ejusdem generis, in which general words following particular and specific words are not given their natural and ordinary sense, standing alone, but are confined to persons and things of the same kind or genus as those enumerated, is applicable to the interpretation of zoning regulations. *Savelkoul v. Board of County Commissioners, Ward County*, 96 N.W.2d 394 (N.D.1959). We conclude that the district court applied the correct principle in interpreting that portion of the Zoning Resolution in question and reached a decision that was not clearly erroneous under Rule 52(a), N.D.R.Civ.P.

The decision of the district court is affirmed.

ERICKSTAD, C. J., and PEDERSON, PAULSON and SAND, JJ., concur.