Walter A. SHAW, Plaintiff and Appellant,

v.

BURLEIGH COUNTY of North Dakota, a political subdivision of the State of North Dakota, Defendant and Appellee.

Civ. No. 9642.

Supreme Court of North Dakota.

Dec. 20, 1979.

Houdek & Wolberg, Bismarck, for plaintiff and appellant; argued by Duane Houdek, Bismarck.

John M. Olson, State's Atty., Bismarck, for defendant and appellee.

ERICKSTAD, Chief Justice.

This is an appeal from a judgment of the District Court of Burleigh County, which upheld a decision of the Board of County Commissioners [hereinafter referred to as the Board] denying Shaw's application for an extension of a special use permit. We affirm.

In the absence of a record in the instant case, the facts as stated herein are as adduced from the briefs of the parties. Counsel for Shaw, during oral argument, stated that he agreed with the facts as set forth in the brief of counsel for the Board. While we are accepting this procedure in the instant case because of the significant questions of law involved, and shall thus proceed to consider the issues, we caution that this procedure shall not constitute a precedent for future cases.

In 1976, Walter A. Shaw made an application for a special use permit for the purpose of occupying a mobile home in a subdivision south of Bismarck, North Dakota. The area has been designated as a residential zone, an area in which mobile homes are not normally permitted.

Shaw made his request pursuant to the provisions of Article 9 of the Burleigh County Zoning Ordinances, and more specifically, Section 9 of that article which provides for the occupancy and use of individual mobile homes in agricultural or residential districts. The Board has, from time to time, granted special use permits allowing lot owners to place a mobile home on their premises prior to constructing a permanent residence. Shaw was granted a special use permit for a period of two years, with the understanding that he would construct a single family, permanent residence within that period, if able to do so.

As the expiration of his permit approached, Shaw applied for an extension to allow him to occupy the same mobile home on the property for an additional two years, believing said extension to be in accordance with Section 9(g) of Article 9 of the Burleigh County Zoning Ordinances. Although Shaw had made some improvements to the property, including the clearing of land, drilling of a well, and installation of a septic tank, he had not begun construction of a permanent residence.

A hearing was held before the Board to review Shaw's application for an extension, and the Board denied Shaw's request on March 8, 1978.

In June of 1978, however, the Board reconsidered its previous action, and set another hearing for July 6, 1978. Shaw stated in his brief to this court that the Board was informed of the following facts at that hearing:

"1. Mr. Shaw complied with all objective prerequisites set out in Article 9 of the Burleigh County Zoning Ordinance for the issuance of a mobile home special use permit.

"2. An area landowner, Mrs. Ray Grabar, objected to the issuance of an extension for Mr. Shaw because of a possible devaluation of surrounding residential lots. Mrs. Grabar both personally appeared at the July 6 hearing and submitted a letter (Defendant's Exhibit 9).

"3. All adjacent landowners and other area landowners submitted a petition stating they had no objection to an extended use permit, provided it was for no longer than two years (Plaintiff's Exhibit 13).

"4. The City/County Planning Department for Bismarck and Burleigh County submitted a recommendation that Mr. Shaw's application be approved, provided Mr. Shaw could give assurance that he would build a home within a two-year period (Plaintiff's Exhibit 14).

"5. Mr. Shaw informed the Commission that he had tried to obtain financing in the past two years but could not. He stated he would build a home if he could get financing in the 1976–78 period, but could not promise the Board that he would be able to do so.

"6. Mr. Shaw had cleared the land, drilled a well and installed a septic system in the period from 1976 to 1978."

Although there is no record of the proceedings before either the Board or the district court, counsel for both parties seem to agree that the Board was primarily concerned about Shaw's inability to assure the Board that he would construct a permanent dwelling within the two-year extension. The Board was also concerned with the placement of mobile homes located on property zoned for residential purposes, especially subdivision developments where such homes are not allowed except by special permit.

With these considerations in mind, on July 6, 1978, the Board rejected Shaw's application by a four-to-one vote of the Commissioners.

On August 3, 1978, pursuant to Sections 11–11–39 and 11–11–41, N.D.C.C., Shaw appealed to the district court from the decision of the Board denying his application for an extension of a special use permit.

In a memorandum opinion dated October 11, 1978, the district court determined that Section 11–11–43, N.D.C.C., which provides for a trial de novo on appeal from a decision of a board of county commissioners, was an unconstitutional delegation of non-judicial power to the district court to review legislative acts. The court therefore interpreted the statute to mean that its authority was limited to an examination of whether or not the statutory or county ordinances, rules, and regulations were followed, and, if there was a matter of reviewable discretion involved, whether or not that discretion had been abused.

Aside from the fact that the district court's inquiry was limited as described above, counsel for the Board stated in his brief that the court did allow the hearing to be conducted on a "de novo" basis, and evidence relevant to the issues was presented by both parties. In its memorandum opinion of March 9, 1979, the district court stated:

"However, since the court's ruling on the constitutional question might, on appeal, be interpreted to be erroneous, all evidence deemed relevant to the issues was made a part of the record."

In accordance with the memorandum opinion of March 9, 1979, the district court determined that the Board had not abused its discretion in denying Shaw's application for an extension of his special use permit, and dismissed Shaw's appeal. Judgment was entered on June 27, 1979, and Shaw appeals to this court from that judgment.

Shaw raises two issues on appeal:

(1) Whether or not Section 11–11–43, N.D.C.C., which provides that appeals from decisions of the Board of County Commissioners shall be heard "de novo", is an unconstitutional delegation of a non-judicial duty to the judiciary to review legislative acts, and

(2) Whether or not the Burleigh County Board of Commissioners abused its discretion in denying Shaw's application for an extension of a special use permit.

The constitutionality of Section 11–11–43, N.D.C.C., which provides that appeals from decisions of the Board of County Commissioners shall be heard "de novo", presents an interesting and significant dilemma. In *Merchant v. Richland County Water, Etc.*, 270 N.W.2d 801 (N.D.1978), we were asked to determine whether or not an appeal from an administrative agency heard by the district court de novo, pursuant to Section

61–16–39, N.D.C.C., was unconstitutional because it usurped legislative authority granted to that governmental agency, and improperly delegated such authority to the judiciary. The question had been certified to this court, but we declined to answer because the question had not been passed upon and determined by the lower court, and, further, because the answer would not have been dispositive of all the issues in the case. However, this is not the situation in the instant case.

Here, the district court determined that Section 11–11–43, N.D.C.C., was an unconstitutional delegation of a non-judicial duty to the judiciary to review legislative acts, and the Board has asserted this position on appeal. Therefore, we are forced to address this important constitutional issue.

Although our State Constitution does not contain a general distributing clause providing for the division of governmental powers among the legislative, executive, and judicial branches, the creation of those branches operates as an apportionment of the different classes of power. As all branches derive their authority from the same constitution, there is an implied exclusion of each branch from the exercise of the functions of the other. *City of Carrington v. Foster County,* 166 N.W.2d 377 (N.D.1969).

In order that the independence of the three distinct branches of government be preserved, it is a fundamental principle that the Legislature cannot invade the province of the judiciary, nor may it impose upon the judiciary non-judicial duties. Section 94 of the North Dakota Constitution provides, in pertinent part, that "No duties shall be imposed by law upon the supreme court or any of the justices thereof, except such as are judicial, . . . ." The enactment of zoning ordinances is a legislative function and not a judicial one.

The boards of county commissioners are the legislative bodies impowered by statute to regulate and restrict, within their respective counties, the location and use of buildings and structures, and the use, condition of use, or occupancy of lands for residence, recreation, and other purposes. Section 11–

33–01, N.D.C.C. The Burleigh County Board is statutorily granted the authority to enact and enforce zoning ordinances for the purpose of promoting the health, safety, peace, morals, comfort, convenience, and general welfare of the public, as well as conserving the value of property throughout the county. Section 11–33–01, N.D. C.C.; Article 1, Sections 1 and 3, Burleigh County Zoning Ordinance.

In considering the scope or nature of appellate review in a case of this type, we must keep in mind the fact that we are examining the act of a coordinate branch of the government in a field in which it has paramount authority. In *Midgarden v. City of Grand Forks,* 79 N.D. 18, 24–25, 54 N.W.2d 659, 663 (N.D.1952), this court quoted *Lockard v. City of Los Angeles,* 33 Cal.2d 453, 202 P.2d 38, 7 A.L.R.2d 990 (1949), as follows:

> " 'Courts have nothing to do with the wisdom of laws or regulations, and the legislative power must be upheld unless manifestly abused so as to infringe on constitutional guaranties. The duty to uphold the legislative power is as much the duty of appellate courts as it is of trial courts, and under the doctrine of separation of powers neither the trial nor appellate courts are authorized to "review" legislative determinations. The only function of the courts is to determine whether the exercise of legislative power has exceeded constitutional limitations.' "

With these considerations in mind, we must analyze Section 11–11–43, N.D.C.C., to determine whether or not it will stand constitutional attack.

Section 11–11–43, N.D.C.C., describes the district court's scope of review in the following language:

> "All appeals taken from decisions of a board of county commissioners shall be docketed as other causes pending in the district court and *shall be heard and determined de novo.*" [Emphasis added.]

As noted by Justice Pederson in *Merchant v. Richland County Water, Etc., supra*

at 803, the same or similar language providing for a trial de novo has been repeatedly used by our Legislature in describing the trial court's scope of review in an appeal from an executive or administrative decision. Among the many examples of the "de novo" language in statutes granting a right of appeal, cited in *Merchant v. Richland County Water, Etc., supra* at 803–04, is Section 11–11–43, N.D.C.C. We noted that the "de novo" requirement is not a "unique aberration." *Id.*

From an evolutionary standpoint, we have allowed the district court to hear testimony, receive exhibits, and make a decision as it would in any trial, without regard to the findings and decision of the Board of County Commissioners. *See Berger v. County of Morton,* 275 N.W.2d 315 (N.D. 1979). The practical reason for allowing the district court to proceed in this manner is that there is no complete record of the proceedings before the Board. The proceedings at the county agency level are not transcribed. *Id.* at fn. 4; *see Gold Street v. Newton,* 2 Dak. 149, 3 N.W. 329 (1879). However, if the Legislature intended to provide that the court should substitute its judgment for that of the Board, totally disregarding the Board's findings, then such intent cannot be carried out. The Legislature may not constitutionally delegate to the judiciary duties which are essentially administrative in character. *City of Carrington v. Foster County, supra* at 384.

For reasons hereinafter stated in this opinion, the district courts shall be permitted to continue to hear testimony and receive exhibits, but that evidence must be viewed in light of the findings, if any, the decision, and the reasons given therefor by the boards of county commissioners.

It is important to recognize that a statute is conclusively presumed to be constitutional unless it is clearly shown to contravene the State or Federal Constitution. *Dorgan v. Kouba,* 274 N.W.2d 167 (N.D.1978).

" 'Courts will construe statutes so as to harmonize their provisions with the Constitution if it is possible to do so, to the end that they may be sustained.' " *Pow-*

*er Fuels, Inc. v. Elkin,* 283 N.W.2d 214, 219 (N.D.1979), quoting from *Hjelle v. Sornsin Construction Co.,* 173 N.W.2d 431, 432 (N.D.1970).

In *Power Fuels, Inc. v. Elkin, supra,* this court was faced with a similar problem in determining the constitutionality of the statutory standard of review of agency decisions under the Administrative Agencies Practices Act. Quoting from *Allstate Ins. Co. v. Knutson,* 278 N.W.2d 383, 388 (N.D. 1979), we said:

" 'In reviewing the findings of an administrator under the Administrative Agencies Practice Act, notwithstanding the amendment to Section 28–32–19(5), N.D.C.C., because of the constitutional prohibition involved in the doctrine of the separation of powers against delegation of nonjudicial functions to the judiciary and Section 94 of our State Constitution, we must exercise restraint.' " *Power Fuels, Inc. v. Elkin, supra* at 219.

Similarly, in reviewing a decision of the Board of County Commissioners, pursuant to Section 11–11–43, N.D.C.C., traditional virtues of judicial restraint must be adhered to.

It is not the function of the judiciary to act as a super board of review. In reviewing the assessments of a special assessment commission as confirmed by a city commission in *Soo Line R. R. v. City of Wilton,* 172 N.W.2d 74 (N.D.1969), we said it was not the province of the court to substitute its judgment for that of the commission, but merely to determine whether or not the commission was within its jurisdiction; whether or not it was mistaken as to the applicable law; whether or not it acted arbitrarily, oppressively, or unreasonably; and whether or not there was substantial evidence to support or justify its determination. *Id.* at Syl. ¶ 5.

This court has also said that in an appeal from a decision of the Board of County Commissioners denying an application for a refund of taxes sought under Chapter 57–23, N.D.C.C., a court should not substitute its judgment as to the valuation of the

property for that of the duly constituted taxing authorities. Unless it is shown that the commission acted arbitrarily or oppressively or unreasonably, or that there is not substantial evidence to support the decision, the decision should not be disturbed. *Appeal of Johnson,* 173 N.W.2d 475, 476 at Syl. ¶ 3 (N.D.1970).

 We believe that a "de novo" hearing, as applied to judicial review of decisions of the Board of County Commissioners under Section 11–11–43, N.D.C.C., means a trial to determine whether or not the Board acted arbitrarily, capriciously, or unreasonably. Section 11–11–43, N.D.C.C., must be treated as merely providing the procedure by which the proceeding may be brought before the court to determine whether or not the Board acted properly. In other words, the decision to issue or deny a special use permit, pursuant to county zoning ordinances, is a legislative function subject only to appellate review to determine whether or not the county's legislative body acted arbitrarily, capriciously, or unreasonably in reaching its decision.

Further, we believe that our scope of review is identical to that of the district court's. It is our function to independently determine the propriety of the Board's decision without according any special deference to the district court's review. *See Reserve Mining Co. v. Herbst,* 256 N.W.2d 808 (Minn.1977). This court performs essentially the same function as the district court, and is governed by the same scope of review.

This construction of Section 11–11–43, N.D.C.C., preserves its constitutionality and is consistent with the strong presumption of constitutionality that adheres to all legislative enactments. *Power Fuels, Inc. v. Elkin, supra; Dorgan v. Kouba, supra.* The problems presented by statutes providing for "de novo" appeals is a perplexing one,[1] and we are mindful of Justice Pederson's admonition in *Merchant v. Richland County Water, Etc., supra* at 804, wherein he said:

"Any decision that trials de novo on appeals from administrative decisions are unconstitutional and violative of the separation of powers would have wide repercussions and should not be treated lightly by the courts."

With this perspective as to our scope of review, let us briefly analyze the facts in this case to determine whether or not the Board's decision to deny Shaw's application for an extension of a special use permit should stand.

Article 9 of the Burleigh County Zoning Ordinances is entitled "SPECIAL USES" and pertains to certain uses which, because of unusual size, safety hazards, infrequent occurrence, effect on the surrounding area, or other reasons, must be reviewed by the Board prior to the granting of a building permit or certificate of occupancy. Special uses include airports, cemeteries, drive-in-theaters, campgrounds, junk and salvage yards, mobile homes, driving ranges, and veterinary clinics. Section 1 of Article 9 sets forth the general provisions for the granting of a certificate of occupancy pursuant to a special use permit, and in pertinent part provides:

"(c) Before approving the issuance of a Building permit or Certificate of Occupancy for a special use, the Board of County Commissioners shall find:

1. The proposed use in harmony with the purpose of this regulation and of portions of the Master Plan of the County of Burleigh for the district.

2. The proposed use will not adversely affect the health and safety of the public and the workers and residents, or farmers in the area, and will not be detrimental to the use or development of adjacent properties or of the general neighborhood.

3. The proposed use will comply with all appropriate regulations for the district in which it will be located.

---

1. The Legislature may wish to examine this problem and clarify the judiciary's scope of review in light of this opinion.

4. The proposed use will comply with all special regulations established by this section and all special conditions necessary for the sanitation safety, and general welfare of the public.

"(d) The Board of County Commissioners is authorized to impose *any* conditions on the granting of a Building Permit or Certificate of Occupancy for a special use that it deems necessary for the protection of the neighborhood and the general welfare of the public. [Emphasis added.]

\* \* \* \* \* \*

"(f) The Board of County Commissioners shall refuse to authorize the issuance of a Building Permit or Certificate of Occupancy for any special use if the Board finds that such special use would fail to comply with any of the requirements of this Ordinance.

"(g) The Board of County Commissioners shall require the applicant for authorization of a special use to furnish any engineering drawings or specifications, site plans, operating plans or any other data the Board finds necessary to appraise the need for or effect, of such special use."

Article 9, Section 9, of the Burleigh County Zoning Ordinances provides that individual mobile homes *may* be permitted in any agricultural or residential district within Burleigh County if certain enumerated requirements are met.[2] Furthermore, subsection (g) of that section specifically provides that:

"(g) The special use permit shall be issued for no more than a two (2) year period. Such permit can be renewed for no more than one (1) extra two (2) year period by the Board of County Commissioners after proper hearings are held as required by Article 9, Section 1, of the Burleigh County Ordinances."

Pursuant to this provision, the maximum duration for the occupancy of a mobile home in a residentially-zoned district is four years, provided the Board grants a renewal permit. Counsel for Shaw conceded at oral argument before this court that, despite this court's ruling in the instant case, Shaw will undoubtedly be forced to remove his mobile home from the subdivision at the end of the four-year period, which would occur sometime during the summer of 1980.

Article 9, Section 9(g), indicates that a special use permit for the occupancy of a mobile home is to be permitted, if at all, only on a temporary basis. The reasonable inference is that such permits are granted as an aid to lot owners who are not in a position to immediately construct a permanent residence.

According to the brief submitted to this court by the Board, Shaw originally obtain-

---

**2.** "Individual mobile homes may be permitted in any Agricultural or Residential Districts within Burleigh County as a special use, provided:

(a) That each site proposed for the use of a mobile home in lieu of permanent housing shall contain the same acreage as required by Article 13, Section 4, R-1-Country Home Residential District Regulations and shall be located in a platted subdivision or if located in an Agricultural zoned area, the tract of land shall contain at least a quarter-quarter section of land provided that such tract shall contain at least thirty-five (35) acres.

(b) The minimum roadway or street abutting each lot used or occupied by a mobile home shall be at least 66 feet in width when located in other than an approved subdivision.

(c) That no mobile home shall be located on less than what is required by Article 13, R-1-Country Home Residential Districts, Section 5, Section 6, and Section 7 of the Burleigh County Zoning Ordinance.

(d) That each mobile home shall be connected to a well or other suitable water supply complying with the State Health Department's standards.

(e) That each mobile home shall be connected to an approved type individual sewage disposal system in compliance with Article 21 of the Burleigh County Zoning Ordinance.

(f) That the mobile home shall be occupied by its owner and said owner shall own the property upon which the mobile home is located.

(g) The special use permit shall be issued for no more than a two (2) year period. Such permit can be renewed for no more than one (1) extra two (2) year period by the Board of County Commissioners after proper hearings are held as required by Article 9, Section 1, of the Burleigh County Ordinances."

ed his two-year special use permit in 1976 based upon his assertions that he would construct a permanent dwelling. Shaw stated in his brief that, at the time the permit was originally granted, there was discussion to the effect that he would begin building in one year.

In March of 1978, when Shaw applied for a two-year extension of the permit, he had made some improvements to the property but had not begun construction. In his brief to this court, Shaw stated that when he appeared before the Board in July of 1978 seeking an extension, he informed the Board he had been unable to obtain financing to build a permanent residence because of his financial condition. He also stated that he would build a permanent home if he could obtain financing, but he could not promise the Board he would be able to do so. Shaw could not assure the Board that he would construct or be capable of constructing a permanent residence within the period of the two-year extension. Thereafter, the Board rejected Shaw's application.

Shaw contends that, having met the requirements set forth in Article 9, Section 9, of the Burleigh County Zoning Ordinances, see fn. 2, he was rightfully entitled to an extension of his special use permit. This argument is without merit. Nowhere in Section 9 is it stated that mobile homes shall be permitted in a residentially-zoned district once the prerequisite conditions are met. Instead, the section provides that "individual mobile homes *may* be permitted . . . as a special use, provided" the additional conditions listed therein are met.

■ The granting of a special use permit is still an exception to normal land use. The conditions listed in Section 9 as prerequisites to the granting of a special use permit for a mobile home are not conclusive. Before approving the issuance of a certificate of occupancy for a special use, the Board must find that the proposed use (1) is in harmony with the purpose of the special use ordinance and the county's master zoning plan; (2) will not be detrimental to the use or development of adjacent properties

or of the general neighborhood; (3) will comply with all the district regulations for the location; and (4) will comply with any special condition necessary for the sanitation, safety, and general welfare of the public. Article 9, Section 1(c), Burleigh County Zoning Ordinances. Furthermore, the Board is authorized to impose *any* conditions on the granting of a certificate of occupancy for a special use that it deems necessary for the protection of the neighborhood and the general welfare of the public. Article 9, Section 1(d), Burleigh County Zoning Ordinances.

It is undisputed that the applicable zoning ordinances would force Shaw to remove his mobile home from the subdivision at the end of the two-year extension period, whether or not construction had begun. Although we are unable to ascertain what assurances or "promises" the Board sought to elicit from Shaw, we believe that its request for assurances from Shaw that he would construct a permanent dwelling within the two-year extension period was an attempt to determine whether or not the ultimate objective, the building of a permanent home, would be served by granting an extension. The facts presented to the Board indicated that this objective could not be achieved.

We conclude that under the facts and circumstances presented to this court through the briefs of the parties', the Board's decision to deny Shaw's application for an extension of his special use permit was not arbitrary, capricious, or unreasonable. The Board could have reasonably determined that, under the circumstances, granting Shaw a two-year extension would (1) be detrimental to the use or development of adjacent properties; (2) decrease the value of surrounding properties; (3) disrupt the orderly development of the subdivision; and (4) be disharmonious with the purpose of the special use ordinances and the county's master zoning plan.

As we stated earlier in this opinion, we were not able to review a record of the proceedings before either the Board or the district court because none was furnished to

this court. This case is unique in that we have no record and no stipulation of facts. Due to Shaw's financial status, the parties agreed to submit the case to this court based on the facts as set forth in their respective briefs. In the future, we hope that boards of county commissioners will disclose the reasons for their decisions in order that the district courts and this court may know what the boards have determined, hence know what to review. Neither the district courts nor our court should be required to speculate as to the basis for the boards' conclusions. When faced with a problem like that before us today, a court should have the benefit of the boards' expertise. The articulation of reasons could afford a safeguard against arbitrary and careless action, and could result in greater consistency in decision making by boards of county commissioners.

For the reasons stated herein, the judgment of the district court is affirmed.

VANDE WALLE, PEDERSON, PAULSON and SAND, JJ., concur.