Raymond J. PULKRABEK and Marlene
M. Pulkrabek, Applicants and
Appellants,

v.

MORTON COUNTY, a Political Subdivision of the State of North Dakota, and
The Board of County Commissioners
for Morton County, North Dakota, Respondents and Appellees.

Civ. No. 11078.

Supreme Court of North Dakota.

June 19, 1986.

Alan C. Erickson, of Sperry & Erickson, Bismarck, for applicants and appellants.

Wayne D. Goter, Asst. State's Atty., Mandan, for respondents and appellees.

VANDE WALLE, Justice.

Raymond J. and Marlene H. Pulkrabek appealed from a district court judgment dismissing their consolidated appeals from decisions of the Board of County Commissioners for Morton County [Board] to deny their application for a building permit and their request for a variance. We affirm.

In April 1983, the Pulkrabeks purchased five acres of land west of Mandan in Morton County. The land is subject to Morton County's zoning authority and, at the time of the purchase, was zoned for residential use with a commercial variance. The Pulkrabeks' property is adjacent to a road owned by Burlington Northern Railroad. Pursuant to an agreement between Morton County and Burlington Northern, the road was constructed and maintained by Morton County and used by the public. That road is not numbered as a highway or classified as a street.

Article 14.1 of the Morton County Zoning Ordinances requires a setback from "rural roads" of 150 feet for residential buildings and 225 feet for commercial buildings. In 1983 the Pulkrabeks received an administrative variance to construct a commercial building within 165 feet of the center of the road. On July 23, 1984, the Pulkrabeks applied for a building permit to move a house onto the property. While their application was pending, the Pulkrabeks began construction of a basement and moved the house onto a foundation within 115 feet of the road. The Pulkrabeks received a letter dated August 1, 1984, from Richard Kjonaas, Morton County Engineer,[1] stating that their application was denied because the plans for the location of the house provided that it was to be within 115 feet of the road and included a basement more than two feet below the 100-year flood plain.

Thereafter, the Pulkrabeks requested the Board to grant them a building permit pursuant to their July 23, 1984, application. The Board denied the Pulkrabeks' application on October 2, 1984. On October 25, 1984, the Morton County Planning Commission conducted a public hearing concerning the Pulkrabeks' request for a variance and thereafter recommended to the Board that that request be denied. Following the Planning Commission's recommendation, the Board denied the Pulkrabeks' request for a variance on November 8, 1984.

The Pulkrabeks appealed the denial of their application for a building permit and their request for a variance to district court, and the appeals were consolidated. On appeal, the Pulkrabeks also contested the validity of the Morton County zoning ordinances. After both parties conducted extensive discovery, Morton County moved for summary judgment. The parties submitted affidavits and briefs in support of and in opposition to the motion. After hearing oral arguments on the motion, the district court concluded that the Morton County zoning ordinances were valid; the road was a "rural road" within the meaning of the zoning ordinances, thereby re-

---

1. Kjonaas served as the Morton County Engineer and as the County Zoning Officer, or, as referred to in the Morton County zoning ordinances, the Zoning Compliance Officer.

quiring a 150-foot setback; and the undisputed facts established that the Board had not acted arbitrarily, capriciously, or unreasonably in denying the Pulkrabeks' application for a permit and request for a variance. The district court granted judgment in favor of Morton County, and the Pulkrabeks appealed.

The Pulkrabeks raise several issues relating to either (1) the validity of the Morton County zoning ordinances, or (2) the Board's decision to deny their application for a building permit and request for a variance.

The Pulkrabeks contend that Articles 1–29 of the Morton County zoning ordinances were invalid during the period of their application for a building permit and their request for a variance because the county auditor had not complied with Section 11–13–02(3), N.D.C.C.[2] The Pulkrabeks assert that the documents establishing proof of publication for those ordinances were not indexed in a reception book as required by Section 11–13–02(3), N.D.C.C., and that the statute was not satisfied by proof of publication filed in a vault in the courthouse basement. The Pulkrabeks do not assert that the ordinances were not published, that the ordinances were unconstitutional, or that they were unaware of the existence or language of the ordinances. In fact, they applied for a building permit and requested a variance pursuant to those ordinances.

█ It is well established that a party may not seek the benefit or application of a law and, in the same proceeding, attack its validity. *Bismarck Public Schools v. Walker*, 370 N.W.2d 565 (N.D.1985); *Frieh v. City of Edgeley*, 317 N.W.2d 818 (N.D. 1982). In the instant case the Pulkrabeks applied for a building permit and requested a variance and, on appeal from the Board's decision to deny their application and request, challenged the validity of the ordinance. An appropriate procedure to challenge the validity of a zoning ordinance is through a separate declaratory-judgment action, or as a defense in an enforcement action. *Eck v. City of Bismarck*, 283 N.W.2d 193 (N.D.1979); see Section 32–23–02, N.D.C.C. Because the Pulkrabeks have sought the application of the zoning ordinances in requesting a building permit and variance, we do not believe they may successfully attack the validity of those ordinances on an appeal from the Board's decision denying their request for a permit and variance.

Our decision in *Olson v. Cass County*, 253 N.W.2d 179 (N.D.1977), does not compel a different result. In that case, plaintiffs who were aggrieved by Cass County's decision to install a culvert did not appeal from that decision but sued for declaratory and injunctive relief. We held that the correctness and propriety of Cass County's decision was a matter which could be adequately resolved through the statutory appeal process. However, that decision dealt with only the correctness and propriety of Cass County's decision and did not address the validity of a zoning ordinance. The statutory appeal process from decisions of county commissions provides a limited scope of review of a commission's decision and is an inappropriate vehicle to assert non-compliance with the statutory procedures for enacting a zoning ordinance.

Nevertheless, the Pulkrabeks' notice of appeal from the Board's decision denying their application for a building permit stated that their appeal was "in the nature of a declaratory judgment action, reviewing all law and ordinances applicable," and we will address this issue with the caveat that this procedure shall not constitute a precedent for future cases.

Section 11–13–02, N.D.C.C., deals with the duties of a county auditor. However, a county commission's zoning authority and the procedure to enact zoning ordinances

---

2. Section 11–13–02(3), N.D.C.C. provides:
 "*11–13–02. Duties of county auditor.* The county auditor shall:
 \* \* \* \* \* \*

 "3. Upon receipt of any document, bond, or other paper required to be filed in his office, number and index the same and make the proper entries in the reception book."

are delineated in Chapter 11–33, N.D.C.C. Section 11–33–09, N.D.C.C., provides:

"*11–33–09. Publication of resolutions—Effective date.* Following the public hearing, the board of county commissioners may adopt the proposed resolutions or any amendments thereto, with such changes as it may deem advisable. Upon adoption of any resolution or any amendment thereto, the county auditor shall file a certified copy thereof with the register of deeds. Immediately after the adoption of any such resolution or any amendment thereto, the county auditor shall cause notice of the same to be published for two successive weeks in the official newspaper of the county and in such other newspapers published in the county as the board of county commissioners may deem necessary. Said notice shall describe the nature, scope, and purpose of the adopted resolution, and shall state the times at which it will be available to the public for inspection and copying at the office of the register of deeds. *Proof of such publication shall be filed in the office of the county auditor.* If no petition for a separate hearing is filed pursuant to section 11–33–10, the resolution or amendment thereto shall take effect upon the expiration of the time for filing said petition. If a petition for a separate hearing is filed pursuant to section 11–33–10, the resolution shall not take effect until the board of county commissioners has affirmed such resolution or amendment in accordance with the procedures of section 11–33–10. Any such resolution may, from time to time, be amended or repealed by the board of county commissioners upon like proceedings as in case of the adoption of a resolution." [Emphasis added.]

■ Section 11–33–09, N.D.C.C., was amended in 1977, and, before that amendment, the underscored language provided that "Proof of publication shall be filed in the office of the county auditor and thereupon the resolution shall take effect." The 1977 amendment deleted the condition that an ordinance would take effect when proof

of publication was filed in the office of the county auditor. Section 11–33–09, N.D.C.C., thus no longer provides that the effective date of an ordinance is contingent upon the indexing requirement of Section 11–13–02, N.D.C.C. We do not believe the failure to comply with the county auditor's indexing duties prescribed in Section 11–13–02, N.D.C.C., invalidates the procedure to enact a zoning ordinance pursuant to Chapter 11–33, N.D.C.C. See *Solen Public School District No. 3 v. Heisler,* 381 N.W.2d 201 (N.D.1986).

■ The affidavit of Paul Trauger, Morton County Auditor, reflects that the zoning ordinances challenged by the Pulkrabeks were amended and reenacted in 1979 and 1980. The proofs of publication of the 1979 and 1980 amendments were filed in a storage vault in the basement of the courthouse. We believe that this complies with the statutory requirements in Section 11–33–09, N.D.C.C., that proof of publication be filed in the office of the county auditor, and we conclude that the Morton County zoning ordinances challenged by the Pulkrabeks were effective.

The remaining issues raised by the Pulkrabeks relate to the correctness and propriety of the Board's decision to deny their application for a building permit and request for a variance. These issues are interrelated with the motion for summary judgment and our standard of review. The Pulkrabeks argue that there were factual issues to be resolved at trial, and therefore summary judgment was inappropriate.

The Pulkrabeks' appeal was taken pursuant to Section 11–11–43, N.D.C.C., which provides:

"*11–11–43. Appeals docketed and tried de novo.* All appeals taken from decisions of a board of county commissioners shall be docketed as other causes pending in the district court and shall be heard and determined de novo."

In *Shaw v. Burleigh County,* 286 N.W.2d 792, 796–797 (N.D.1979), we discussed "de novo" review pursuant to Section 11–11–43, N.D.C.C.:

"For reasons hereinafter stated in this opinion, the district courts shall be permitted to continue to hear testimony and receive exhibits, but that evidence must be viewed in light of the findings, if any, the decision, and the reasons given therefor by the boards of county commissioners.

\* \* \* \* \* \*

"We believe that a 'de novo' hearing, as applied to judicial review of decisions of the Board of County Commissioners under Section 11–11–43, N.D.C.C., means a trial to determine whether or not the Board acted arbitrarily, capriciously, or unreasonably. Section 11–11–43, N.D. C.C., must be treated as merely providing the procedure by which the proceeding may be brought before the court to determine whether or not the Board acted properly. In other words, the decision to issue or deny a special use permit, pursuant to county zoning ordinances, is a legislative function subject only to appellate review to determine whether or not the county's legislative body acted arbitrarily, capriciously, or unreasonably in reaching its decision.

"Further, we believe that our scope of review is identical to that of the district court's. It is our function to independently determine the propriety of the Board's decision without according any special deference to the district court's review. *See Reserve Mining Co. v. Herbst,* 256 N.W.2d 808 (Minn.1977). This court performs essentially the same function as the district court, and is governed by the same scope of review."

In *Shaw v. Burleigh County, supra,* we noted that in *Berger v. County of Morton,* 275 N.W.2d 315 (N.D.1979), we had allowed district courts to hear testimony, receive exhibits, and make a decision as it would in any trial without regard to the findings and decision of a board of county commissioners. No issue involving the constitutionality of de novo review was raised in *Berger.*

However, in *Shaw v. Burleigh County, supra,* 286 N.W.2d at 796, we limited the scope of that review in the *Berger* case when we stated:

"... if the Legislature intended to provide that the court should substitute its judgment for that of the Board, totally disregarding the Board's findings, then such intent cannot be carried out. The Legislature may not constitutionally delegate to the judiciary duties which are essentially administrative in character."

 Our decision in *Shaw v. Burleigh County, supra,* thus makes it clear that, on appeal from a decision of a county commission, the principle of separation of powers prevents the parties from relitigating the correctness and propriety of a commission's decision. That case establishes the incompatibility of the standard for a court's review of an appeal from a decision of a county commission and the standard for ruling on a summary judgment. The standard in ruling on a motion for summary judgment is whether there are genuine issues of material fact, whereas in reviewing an appeal from a decision of a county commission, the standard is whether that decision was arbitrary, capricious, or unreasonable. On appeal from a decision of a county commission, a reconsideration of evidence is limited to the extent that such evidence was presented to the county commission, and the evidence must be reviewed in light of the commission's decision to determine whether that decision was arbitrary, capricious, or unreasonable. The Pulkrabeks' burden on appeal from the Board's decision is not, as asserted by them, to show by the greater weight of evidence that they were entitled to the relief requested. Rather their burden is to show that the Board acted arbitrarily, capriciously, or unreasonably. Consequently, we do not believe that the summary-judgment standard is appropriate for review of an appeal from a county commission.[3]

---

3. *Matter of Persons,* 311 N.W.2d 919 (N.D.1981), dealt with the notice requirements for a summary judgment motion within the context of an

appeal from a water management Board. However, the issue of the propriety of using a sum-

In the instant case, the court held a hearing on the motion for summary judgment. The transcript of that hearing reflects that the district court reviewed the record to determine whether the Board's decision was arbitrary, capricious, or unreasonable. That record included affidavits of the Morton County Engineer, Richard Kjonaas, the Morton County Auditor, Paul Trauger, and the Pulkrabeks. After reviewing that record, we believe it established an adequate record of proceedings before the Board and the reasons for the Board's decision to permit a reviewing court to understand the basis of the Board's decision.[4] The Pulkrabeks do not dispute what was presented to the Board or the basis of the Board's decision; rather, they assert, in essence, that a reviewing court can make an "independent judgment" on issues which were before the Board. However, *Shaw v. Burleigh County, supra,* prevents a reviewing court from sitting as a super board and redeciding issues which were decided in the first instance by the county commission. Accordingly, we conclude that the Pulkrabeks' argument on summary judgment is more appropriately framed in terms of whether the Board's decision was arbitrary, capricious, or unreasonable.

With this perspective as to our review, we will analyze the record of the proceedings before the Board to determine whether its decision to deny the Pulkrabeks' application for a building permit and request for a variance should stand.

Morton County Zoning Resolution, Article 18(1), requires that residential buildings shall be located at least 150 feet from "rural roads," and that commercial buildings shall be located at least 225 feet from "rural roads." Rural roads are not defined in Article 18 but, at the time of the Pulkrabeks' application, were defined in Article 22(B)(5) as "improved public roads not numbered as highways or classified as streets." Article 14.1 provides a procedure for obtaining a variance from zoning regulations when strict compliance with the ordinance would result in extraordinary hardship to the owner. A variance may be obtained after a hearing or by an administrative variance. An administrative variance may be granted by the zoning-compliance officer without a public hearing if he determines that no objection to the variance exists. However, all administrative variances are reviewed by the Planning Commission and the Board. If an administrative variance is not granted, a public hearing before the Planning Commission is required and the Planning Commission then makes a recommendation to the Board.

The Pulkrabeks contend that Burlington Northern's road was not a "rural road" requiring a 150-foot setback because it was privately owned and therefore not a public road.

■ Zoning ordinance interpretations are subject to the ordinary principles of statutory construction. *Rinker Materials Corp. v. City of North Miami,* 286 So.2d 552 (Fla.1973); *Framingham Clinic, Inc. v. Zoning Board of Appeals,* 382 Mass. 283, 415 N.E.2d 840 (1981); *George v. Town of Edenton,* 294 N.C. 679, 242 S.E.2d 877 (1978). The basic rule of construction is to ascertain the intent of the enacting

mary judgment on an appeal from a governmental subdivision was not raised.

**4.** We recognize that the record of proceedings before a county commission is often inadequate or non-existent. In *Shaw v. Burleigh County,* 286 N.W.2d 792 (N.D.1979), we permitted the district court to hear testimony to reconstruct the record of the proceedings before county commissions. However, *Shaw* does not mandate that a record of proceedings before a commission be reconstructed only by testimony. Other ways to reconstruct an inadequate or non-existent record include, but are not limited to, a stipulation of the evidence presented to the commission, affidavits stating what was presented to the commission, or other suitable documentation.

This court has approved a resolution to be submitted to the Fiftieth Legislative Assembly to study appeals of decisions of county commissioners and other local governing bodies. Part of that request includes a study of the lack of a record of proceedings before the governing bodies for adequate court review.

body. *Pioneer Trust & Savings Bank v. County of Cook,* 71 Ill.2d 510, 17 Ill.Dec. 831, 377 N.E.2d 21 (1978); *George v. Town of Edenton, supra.* An ordinance must be viewed as a whole and given a fair and reasonable construction in view of the setting in which it was enacted; the goals and purposes of the ordinance; the plain and ordinary meaning of the words; and the general structure of the ordinance. *Pioneer Trust & Savings Bank v. County of Cook, supra.*

■ In the instant case, we believe the definition of rural road in Article 22 must be read in conjunction with the entire zoning ordinance, including the setback requirements in Article 18. One reason for setback restrictions is to prevent construction of buildings too close to public roads so that any maintenance of the road will not be hindered by the building. In that context, a setback restriction is part of a county's comprehensive zoning plan. See Section 11–33–03, N.D.C.C. Within the framework of the authority for a comprehensive zoning plan and the reasons for setback restrictions, we believe that the intent of the ordinance defining "rural road" as a public road is that a road's use, not its actual ownership,[5] controls whether it is a "rural road." The use of a road is more important than its ownership in determining whether it is the type of road for which setback restrictions are necessary to carry out a comprehensive zoning plan and satisfy the objectives of zoning ordinances. See Section 11–33–03, N.D.C.C. We believe that the purpose and objective of the zoning ordinance is furthered by construing a "rural road" to mean a road which is used by the public.

■ In the instant case, the record reflects that Burlington Northern owns the property on which the road is located and that, pursuant to an agreement between Morton County and Burlington Northern, the road was constructed and maintained by Morton County and used by the public.

We believe the public use of the road, coupled with the public maintenance and construction of the road, militates in favor of a determination that the road is the type for which a setback restriction is necessary to satisfy the objectives of the zoning ordinances. This conclusion is supported by an affidavit of the Morton County Auditor that the application for a building permit was denied because of the need to enforce the setback restriction to facilitate and to economize possible future widening or relocation of the road. The lessening of government expenditures is one of the objectives of zoning regulations. Section 11–33–03(4), N.D.C.C.

Furthermore, the implication of the Board's decision to deny the building permit is that the road was a "rural road" within the meaning of Article 18. In *Munch v. City of Mott,* 311 N.W.2d 17 (N.D.1981), we pointed out that interpretations of zoning ordinances by a city council are quasi-judicial acts, and a reviewing court should give deference to the judgment and interpretation of the council rather than substitute its judgment for that of the enacting body. Although the Board's interpretation is not necessarily controlling, we believe that it is entitled to deference.

We believe that the road was a "rural road" within the meaning of the Morton County zoning ordinances, and we conclude that the Board's decision to deny the building permit was not arbitrary, capricious, or unreasonable.

The Pulkrabeks also contend that the variance should have been granted because of extraordinary hardship. The decision to grant or deny a variance is a decision made in the first instance by the Board and is subject to a court's limited review to determine whether that decision was arbitrary, capricious, or unreasonable. *Shaw v. Burleigh County, supra.*

■ In the instant case, the record reflects that the Pulkrabeks dug the base-

---

5. A county has eminent-domain power over roads which it does not own. Art. 1, § 16, N.D.

Const.; Section 32–15–02(5), N.D.C.C.

**616**

ment and moved the house onto the foundation while their application for a permit was pending. This evidence militates against the extraordinary hardship urged by the Pulkrabeks and demonstrates that their conduct precipitated the hardship. After reviewing the record before us, we cannot say that the Board's decision to deny the variance was arbitrary, capricious, or unreasonable.

The judgment of the district court is affirmed.

ERICKSTAD, C.J., and GIERKE, MESCHKE and LEVINE, JJ., concur.