2009 ND 14

**Fred M. HECTOR and Earlyne L. Hector, Petitioners and Appellants**

v.

**CITY OF FARGO, a political subdivision of the State of North Dakota, Respondent and Appellee.**

No. 20080177.

Supreme Court of North Dakota.

Feb. 3, 2009.

Rehearing Denied April 2, 2009.

Jonathan T. Garaas, Garaas Law Firm, DeMores Office Park, Fargo, ND, for petitioners and appellants.

Mike Miller (argued) and Stacey Tjon Bossart (appeared), Assistant City Attorneys, Fargo, ND, for respondent and appellee.

VANDE WALLE, Chief Justice.

[¶ 1] Fred and Earlyne Hector appealed from a district court judgment affirming the decision of the Fargo City Commission to deny their application for zoning map amendments and growth plan modifications regarding their property located in south Fargo. We affirm, holding the City did not act arbitrarily, capriciously or unreasonably when it denied the Hectors' zoning request. Furthermore, we hold the district court did not err when it found the City had adopted a comprehensive plan as required by N.D.C.C. § 40–47–03, and the City did not engage in illegal contract zoning with the Hectors.

I.

[¶ 2] Fred and Earlyne Hector own land north of 52nd Avenue South in Fargo. The land at issue is divided into two quarter sections by a stretch of I–29 which bisects the land from north to south. To the west of the interstate lies the Southeast Quarter of Section 34, Township 139 North, Range 49 West ("Starr Quarter"); to the east lies the Southwest Quarter of Section 35, Township 139 North, Range 49 West ("Frontier Quarter"). The Starr Quarter is characterized, in part, by its proximity to other developments, including a residential development known as Woodhaven platted to the west, the Kennedy Elementary School located to the northwest, and the Microsoft Business Solutions campus immediately to the north. The area surrounding the Frontier Quarter is less populated, with a residential development approximately 1/4 mile away. Both the Starr and Frontier Quarters have long been zoned by the City of Fargo as "agricultural," which allows the land to be used for agricultural purposes, detached houses, parks and open space, utilities, day care, safety services and telecommunications facilities.

[¶ 3] On April 24, 2007, the Hectors submitted a request for amendments to the area growth plan and zoning map to have significant portions of the Starr and Frontier Quarters re-zoned as "general commercial," which would allow the land to be used for retail, service, office and commercial uses. The Hectors' initial April 24, 2007, request sought cumulative zoning changes of 95.6 acres for the Starr Quarter and 50 acres for the Frontier Quarter. On May 17, 2007, in response to concerns communicated to the Hectors by City representatives regarding the proposed amendments and how they might affect road access points, utility easements, and construction issues, the Hectors submitted

a "second alternative" revised application. This May 17 application reduced the requested commercial area to 83.2 acres on the Starr Quarter, and 49 acres on the Frontier Quarter. On May 22, 2007, the Hectors' counsel met with City officials who expressed concerns regarding storm water retention in the area. Subsequently, on May 24, 2007, the Hectors submitted a third alternative request, reducing proposed commercial zoning in the Frontier Quarter to 45 acres, and agreeing to certain concepts in the Starr Quarter, including the preservation of a frontage road and the designation of a plot for storm water retention.

[¶ 4] The staff of the City of Fargo Planning Department conducted an analysis of the Hectors' requests and prepared its staff report and recommendations on the potential amendments to the growth plan and zoning map. The staff based its analysis on the revised applications from May 17, 2007, and May 24, 2007, and considered both the Starr and Frontier Quarters in its report. The staff reviewed whether the proposed amendments were consistent with surrounding land usage, and evaluated the proposals under the criteria promulgated in Fargo's Land Development Code for analyzing zoning map amendments. The staff found that, while commercial development was consistent with the nature of the Frontier Quarter, due emphasis had not been placed on ensuring such development would be compatible with the surrounding area, the proposed zone change was too intense and not in keeping with the City's plans, and any amendments should be postponed to allow for a more detailed determination on the appropriate acreage for commercial development on the quarter. Regarding the Starr Quarter, the staff believed the proposals "too intense" when factoring in the burgeoning Woodhaven residential area, the Kennedy Elementary School, and the

City's desire to "preserve the integrity" of the Microsoft Business Solutions campus. The staff concluded its analysis by unanimously recommending the Hectors' proposed amendments be denied for failing to "satisfy the approval criteria and ... the Land Development Code."

[¶ 5] A public hearing on the Hectors' application was held on August 13, 2007. The City Commission heard testimony from a representative of the Hectors who presented argument in favor of the amendments. The Senior Planner for the City of Fargo testified that the Planning Department staff had been generally supportive of commercial expansion in the Frontier Quarter, but due to "opposition of the neighborhood" recommended denial of the amendment. While the Commission noted that no written protest or objection to the Hectors' application had been received by or filed in the Planning and Development Department, a few citizens did voice opposition to the proposed amendments at the public hearing. At the end of the hearing, the Commission voted to accept the findings and recommendations of the Planning Department and denied the Hectors' application.

[¶ 6] On September 12, 2007, the Hectors appealed the decision of the City Commission to the East Central Judicial District Court. At the district court, the Hectors argued the City committed a series of constitutional violations, failed to identify and articulate reasons for denying the Hectors' zoning requests, unlawfully expanded the role of the City Planner and City Commission in zoning decisions, engaged in spot zoning, and improperly granted standing. The district court rejected the Hectors' arguments, and affirmed the decision of the Fargo City Commission.

[¶ 7] On appeal to this Court, the Hectors argue the district court erred in affirming the decision of the Fargo City Commission, contending the Commission acted in an arbitrary, capricious and unreasonable manner when it considered the Hectors' application. The Hectors further argue the City of Fargo did not comply with the North Dakota Century Code by failing to implement a comprehensive zoning plan, and that the City has engaged in illegal contract zoning.

## II.

[¶ 8] The Hectors argue the Fargo City Commission acted in an arbitrary, capricious and unreasonable manner when it denied their proposed amendments to the zoning map and growth plan, and that the district court erred when it affirmed the Commission's decision.

[¶ 9] In an appeal from the decision of a local governing body, this Court's scope of review is very limited. *Pic v. City of Grafton,* 1998 ND 202, ¶ 6, 586 N.W.2d 159. This Court's function is to independently determine the propriety of the local governing body's decision, without any special deference to the district court's decision. *Anderson v. Richland County Water Res. Bd.,* 506 N.W.2d 362, 367 (N.D.1993). The decision of a local governing body must be affirmed unless the local body acted arbitrarily, capriciously or unreasonably, or if there is not substantial evidence supporting the decision. *Graber v. Logan County Water Res. Bd.,* 1999 ND 168, ¶ 7, 598 N.W.2d 846. Such a standard of review ensures that the court does not substitute its judgment for that of the local governing body which initially made the decision. *See Pic,* 1998 ND 202, ¶ 11, 586 N.W.2d 159. A decision is not arbitrary, capricious or unreasonable if it is the product of a rational mental process by which the facts and law relied upon are considered together for the purpose of achieving a reasoned and reasonable interpretation. *Klindt v. Pembina County Water Res. Bd.,* 2005 ND 106, ¶ 12, 697 N.W.2d 339. In an appeal from a nonjudicial decision, such as a city commission's denial of a zoning amendment request, the record is adequate to support the findings and conclusions of the city if it allows us to discern the rationale for the decision. *See Lindteigen v. City of Bismarck,* 1997 ND 123, ¶ 7, 565 N.W.2d 47.

[¶ 10] Fargo's Land Development Code provides a framework by which the City must operate when amendments to the zoning map are proposed. First, the City Planner must review the proposals and "provide a report to the Planning Commission describing the purpose and effect of the amendment." FMC § 20–0906(C) (2005). Next, the Planning Commission must hold a public hearing on the proposed zoning map amendment and, subsequently, make a recommendation to the Board of City Commissioners. FMC § 20–0906(D). Once this recommendation is made, the City Commission must hold its own public hearing on the proposed amendments, after which it "shall act to approve or deny" the amendment. FMC § 20–0906(E).

[¶ 11] Here, as documented in the record, the Planning Department staff provided a report to the Commission on the Hectors' application. Basing the analysis on the revised applications from May 17, 2007, and May 24, 2007, the staff considered both quarters of the Hectors' property, and first determined whether the proposed change was consistent with present and future surrounding land uses. As to the Frontier Quarter, the staff found that surrounding residential developments were at least 1/4 mile from the proposed commercial development, that such spacial considerations allowed for "ample opportu-

nity to mitigate any harm that may be raised by the surrounding neighborhood," and concluded that the proposed changes were appropriate. However, when considering the Starr Quarter, the staff noted the nearby presence of the Kennedy Elementary School, which indicated to the staff that a "significant portion" of the nearby area "should be slated for residential development in a manner that would support the school and provide for a logical transition" to the already existing residential Woodhaven development. The staff also noted the nearby presence of the Microsoft Business Solutions campus which was zoned "general office" and which could be harmed by the "too intense" nature of the Hectors' proposal. The staff concluded on this issue that the "proposed development on the west side of the I–29 is inconsistent with the development that has already occurred in the area."

[¶ 12] Fargo's Land Development Code next required the Planning Commission to consider four criteria, after which the application "may be approved" if it met "all of the criteria." FMC § 20–0906(F). The criteria which the Planning Commission must specifically consider are whether:

1.  The requested zoning change is justified by a change in conditions since the previous zoning classification was established or by an error in the zoning map;

2.  The City and other agencies will be able to provide necessary public services, facilities, and programs to serve the development allowed by the new zoning classification at the time the property is developed;

3.  The approval will not adversely affect the condition or value of property in the vicinity; and

4.  The proposed amendment is consistent with the purpose of this Land Development Code, the applicable Growth Plan and other adopted policies of the City.

FMC § 20–0906(F).

[¶ 13] In its analysis of these criteria, the Planning Department staff first considered whether the proposal was justified by a change in circumstances since the previous zoning classification was established or whether there was an error in the zoning map. For the Frontier Quarter, the staff found that while commercial usage would be appropriate, due emphasis was not placed on ensuring that such usage would be compatible with the surrounding area. The staff suggested the prudent course would be to allow the previously initiated growth plan to "run its course," which would allow the City to later determine how much actual commercial development would be appropriate. Therefore, no "change in conditions" had yet occurred to alter the City's course set by the previous growth plan. As to the Starr Quarter, the staff found the Hectors' proposal did not take into account the Woodhaven residential development or the Kennedy Elementary School. Further, the staff noted the proposed plan may prove "too intense" to exist in harmony with the Microsoft Business Solutions campus. For both the Starr and Frontier Quarters, the staff found there had been no zoning map error.

[¶ 14] The staff then considered whether the City and other agencies would be able to provide necessary public services, facilities and programs to serve the development allowed by the new zoning classification at the time the property would be developed. The staff found that there would be no problem providing these services and programs for the land in question, and deemed that this criteria was satisfied for both the Starr and Frontier Quarters.

[¶ 15] The staff next analyzed whether approving the Hectors' amendments would

adversely affect the condition or value of property in the vicinity of the land to be re-zoned. While the Planning Department staff noted they had no documentation or evidence that approving the zoning change would adversely affect property in the vicinity for either quarter, they again stated that the amendment appeared "too intense" and "not in keeping with adopted plans and existing development," and that allowing such development could negatively affect the condition of nearby property.

[¶ 16] Finally, the staff looked to whether the Hectors' application was consistent with the purpose of the Land Development Code, the applicable growth plan and other adopted policies of the City. While the staff found that "some commercial development on the subject property is consistent with the Comprehensive Policy Plan and the Growth Plan," other factors such as the proximity to the elementary school, the reliance on the growth plan by home owners in the neighboring residential development, and the concerns of staff to provide suitable land use for the Microsoft campus made the Hectors' proposal inconsistent with the documented policies and regulations of the City.

[¶ 17] Once the staff finished its analysis of the Hectors' proposed amendments, the Planning Commission held a public hearing as required under FMC § 20–0906(D). The public hearing, held during the 9:00–9:45 a.m. block on June 13, 2007, featured discussion among the Planning Commission members, a representative of the Hectors, and an area resident. The Planning Commission unanimously voted to accept the findings of the Planning Department staff in its analysis. While the Hectors' proposal was waiting for a vote by the City Commission, the Hectors submitted a separate proposal for a limited zoning change for a 52–acre segment of their property; this separate proposal was requested because of a developer's interest in purchasing the land for commercial purposes. The City Planning Director recommended granting the request to re-zone the 52 acres to "general commercial" with a conditional overlay limiting land usage and design standards, finding the request to be "consistent with the Growth Plan of the City of Fargo." The City Commission granted the 52–acre request at the 5:15 p.m. public hearing on July 30, 2007.

[¶ 18] The Hectors' overall request for zoning amendments came before the City Commission on August 13, 2007, when the Commission held a public hearing as required under FMC § 20–0906(E). The Commission heard testimony on the application from a Senior Planner, who summarized the background of the proposal and stated the Planning Department staff felt that anything beyond the 52 acres the Commission approved on July 30 would "be moving quite a ways away from the Growth Plan." After hearing additional testimony from a representative of the Hectors as well as area residents, the City Commission voted to deny the Hectors' request by a 4–1 vote.

[¶ 19] By moving through the steps, analysis, and hearings as required and denoted in FMC § 20–0906, the City of Fargo paid strict credence to the form and procedure required when an amendment to the zoning map and growth plan is proposed. Furthermore, the decision to deny the Hectors' request was based on the Planning Department report which formed a reasoned and rational analysis of the issues underlying the amendments, including the nature of the surrounding property, the goals of the City in developing the area, and the breadth of the Hectors' request. Moreover, the City's grant of the 52–acre zoning change on July 30, 2007, is consistent with the overall analysis given to the Hectors' proposal, as it rein-

forces the City's belief that, while some commercial development would be appropriate for the area, placing a limit on such development—here, a limit of 52 acres—would be the most prudent action while the City waited to see how the area continued to develop in the future. The analyses conducted and procedures followed by the City in reviewing the Hectors' proposals show that the decision to deny the amendments was the outcome of a rational process by which facts and law were considered together to achieve a reasoned and reasonable interpretation. The City Commission's decision to deny the Hectors' amendments was neither arbitrary, capricious nor unreasonable.

### III.

[¶ 20] The Hectors argue the City of Fargo violated North Dakota statutes by not having a comprehensive plan for its zoning regulations. Specifically, the Hectors assert that, by the absence of such a plan, there exists no properly promulgated set of standards by which to measure the actions of the City when making zoning decisions. The Hectors further argue that no such comprehensive plan was passed under the required statutory procedures.

[¶ 21] Section 40–47–01, N.D.C.C., states that the governing body of a city may pass zoning regulations to promote the health, safety, morals or general welfare of the community. The Code further dictates that such regulations:

> [B]e made with reasonable consideration as to the character of each district and its peculiar suitability for particular uses with a view to conserving the value of buildings and encouraging the most appropriate use of land throughout the city. The comprehensive plan shall be a statement in documented text setting forth explicit goals, objectives, policies, and standards of the jurisdiction to

guide public and private development within its control.

N.D.C.C. § 40–47–03 (2008). Zoning regulations must also go through several formal procedures to be effective, including: copies of proposed regulations must be filed with the city auditor, a public hearing must be held on the regulations, and notice of passed regulations must be published in the official newspaper of the city. N.D.C.C. § 40–47–04.

[¶ 22] Here, the City of Fargo points to a list of over 80 policy statements as containing the goals, objectives, and standards of the City pertaining to zoning regulations. This list, called the "Comprehensive Policy Plan," provides detailed plans for the Fargo community. However, the City of Fargo adopted the Policy Plan as a resolution rather than as an ordinance. This Court has previously noted the informal nature of resolutions, and the tendency of such acts to fall short of establishing a formal, permanent rule of government. *See Mitchell v. City of Parshall,* 108 N.W.2d 12, 13–14 (N.D.1961) (reviewing the "temporary" nature of resolutions which are generally in the form of the municipality or official body's opinions rather than binding law). Regardless of the stricture of the Policy Plan's passage, the policy statements embodied within the Plan were later codified in Fargo's Land Development Code. The Land Development Code satisfies the procedural guidelines set forth by N.D.C.C. § 40–47–04, and, like the Policy Plan, contains the standards by which the City of Fargo must adhere when making zoning decisions. Included within its provisions, the Land Development Code spells out what Fargo may do when zoning in extra-territorial areas (FMC § 20–0108), and denotes what activities and buildings are permitted in certain zoning areas (FMC § 20–0401). When the Land Development Code re-

quires a land use to conform to specific standards, very strict criteria must be met by any potential user. *See* FMC § 20–0402 (setting out use-specific standards for several uses, including off-premise advertising signs, day care, religious institutions and adult entertainment centers). Furthermore, it was the Land Development Code which the Planning Department staff relied upon in its analysis recommending denial of the Hectors' proposed amendments, which was then relied upon by the City Commission when it denied the Hectors' application.

[¶ 23] Through its detailed standards and restrictions, the Land Development Code formulates a comprehensive plan which informs builders and landowners of their rights and the boundaries within which they must work when planning their land use. The City of Fargo has complied with the requirements of N.D.C.C. §§ 40–47–03 and 40–47–04.

## IV.

[¶ 24] The Hectors argue the City of Fargo engaged in illegal contract zoning. Contract zoning occurs when a local government contracts away the exercise of its zoning power or obligates itself by an advance contract to provide a particular zoning for the benefit of a private landowner. 83 Am.Jur.2d *Zoning and Planning* § 41 (2003). More specifically, contract zoning occurs when a city enters into an agreement with a landowner, and the owner promises to subject his or her property to deed restrictions while the city promises to enact a zoning amendment and not to alter the zoning change for a specified period of time. *Chrismon v. Guilford County*, 322 N.C. 611, 370 S.E.2d 579, 593 (1988) (*quoting* Ronald M. Shapiro, *The Case for Conditional Zoning*, 41 Temp. L.Q. 267, 269 (1968)). The practice of contract zoning is generally prohibited throughout the country. 83 Am.Jur.2d

*Zoning and Planning* § 41. As the North Carolina Supreme Court noted in *Chrismon*, contract zoning "represents an abandonment on the part of the zoning authority of its duty to exercise independent judgment in making zoning decisions." 370 S.E.2d at 593.

[¶ 25] We have never determined the legality of contract zoning in North Dakota. However, we need not decide that issue in the case before us, because there was no instance of contract zoning between the City of Fargo and the Hectors. There is no indication in the record that the City of Fargo made any private promise to amend the zoning map for the Hectors. Simply speaking with representatives of the City regarding the City's concerns about the breadth of the Hectors' requests is not, by itself, contract zoning. The Hectors must show that some private agreement was reached between the parties, and they have failed to do so in this matter.

## V.

[¶ 26] We affirm the judgment of the district court, holding the City of Fargo did not act arbitrarily, capriciously or unreasonably when it denied the Hectors' request for amendments to the zoning map. Furthermore, the City has a comprehensive plan for zoning as required by N.D.C.C. § 40–47–03, and did not engage in illegal contract zoning with the Hectors. We have considered the remaining issues and arguments raised by the Hectors and determine they are either unnecessary to our decision or without merit.

[¶ 27] DALE V. SANDSTROM, DANIEL J. CROTHERS, MARY MUEHLEN MARING, and CAROL RONNING KAPSNER, JJ., concur.