2013 ND 241

**Richard DAHM, Appellant**

v.

**STARK COUNTY BOARD OF COUNTY COMMISSIONERS, Appellees.**

No. 20130238.

Supreme Court of North Dakota.

Dec. 19, 2013.

Amy L. De Kok (argued), Jillian Rupnow (appeared), and Lawrence Bender (on brief), Bismarck, ND, for appellant.

Mitchell D. Armstrong, Bismarck, ND, for appellees.

VANDE WALLE, Chief Justice.

[¶ 1] Richard Dahm appealed from a district court judgment affirming the decision of the Stark County Board of County Commissioners ("County Board") to deny his application for a zoning change and a preliminary plat approval. We affirm, holding the County Board's decision to deny the application and institute a six-month appearance prohibition was not arbitrary, capricious, or unreasonable. We also hold the district court did not err in denying Dahm's motion to submit additional evidence.

I

[¶ 2] In July 2012, Dahm submitted an application to the County Board for a zoning amendment to change his property designation from agricultural to residential. Dahm also sought approval of a preliminary plat called Duck Creek Estates. The purpose of the application was to obtain approval for the creation of a ninety-nine lot residential subdivision to "provide a rural living environment in a quasi-urban setting...." The land at issue is located within a portion of the East Half of Section 2, Township 139, Range 97. The land is two miles west of the Dickinson city limits, and located in between Interstate–94 to the north and Highway 10 to the south. The property is adjacent to a previously platted subdivision called Maryville Subdivision.

[¶ 3] Two public hearings were held before the Planning and Zoning Commission. At the first hearing, City and County Planner Steve Josephson recommended denying Dahm's application based on several alleged deficiencies: Dahm did not specify which residential district he wanted to re-zone; there was no contract with adjacent land owners ensuring access to Highway 10; the application did not indicate whether road and access widths would meet or exceed Stark County regulations; the application did not indicate what type of bridge would overpass Duck Creek; the application did not delineate the location of wetlands or flood plains or include a flood plain analysis and environmental study; development could result in "pinching" the water flow of Duck Creek; and no potable water was available at the site. Planner Josephson also found the application was inconsistent with the Stark County Comprehensive Plan, a guide for county land development. Rather than making a formal recommendation to the County Board, the Zoning Commission continued the hearing to allow Dahm to revise his application.

[¶ 4] In response, Dahm submitted additional information to the County Board, including a letter responding to the deficiencies, a development narrative, an application package addendum, and proposed zoning maps. The Southwestern District Health Unit also submitted a letter stating that Dahm's plans for a sewer system were satisfactory. Prior to the second public hearing, Planner Josephson again recommended denying Dahm's application based on several deficiencies, including: the lack of a traffic impact analysis; road access did not meet Stark County standards; the application did not include the location of wetlands and flood plains; the absence of a flood plain elevation study to ascertain whether the project met the requirements of the National Flood Insurance Program and state law; the absence of a field wetland delineation for use during U.S. Army Corps of Engineers 404 Permit Process; no potable water; and the application was inconsistent with the Stark County Comprehensive Plan.

[¶ 5] At the second public hearing, Dahm's attorney stated that an adjacent landowner agreed to provide highway access, on the condition that the adjacent

owner's property could also be re-zoned. Dahm's attorney also claimed traffic density would be about 925 vehicles per day. Members of the neighboring Maryville subdivision voiced their opposition to the application based on concern over traffic and dust control. Planner Josephson also spoke in opposition to the application. Members of the Planning and Zoning Commission reiterated their trepidation about traffic access points, increased traffic density, and the lack of a study concerning the wetlands and flood plains. Based on these concerns, the Zoning Commission voted 8–0 to recommend a denial of the zoning amendment request.

[¶ 6] The County Board adopted the recommendation of the Zoning Commission and denied Dahm's request by a vote of 5–0. In voting to deny the application, Commissioner Elkin stated:

> This project has come before us three times already—three months in a row. The issues that were of concern by the planning and zoning board were never addressed, fencing issues, road issues, sewage issues, and with that I'm going to second that motion to deny with a condition that they not be allowed to come before us for six months.

In its motion denying the application, the County Board also included a provision that Dahm could not appear before the County Board for six months.

[¶ 7] Dahm appealed the County Board's decision to the district court and also sought to introduce evidence of similar zoning requests that had been previously approved by the County Board. Dahm also argued two of the County Commissioners, Jay Elkin and Russell Hoff, had "direct pecuniary involvement in recent land development in the same vicinity as the Project," and their decision to deny the application had possibly been colored by their own economic self-interest. The

court denied Dahm's motion to submit additional evidence and affirmed the County Board's decision to deny the application for zoning change.

## II

[¶ 8] In an appeal from a board of county commissioners, we have stated that the "principle of separation of powers precludes parties from relitigating the correctness and propriety of the county [board's] decision and prevents a reviewing court from sitting as a super board and redeciding issues that were decided in the first instance by the county commission." *Hagerott v. Morton Cnty. Bd. of Comm'rs*, 2010 ND 32, ¶ 7, 778 N.W.2d 813. Accordingly, our standard of review is very deferential:

> When considering an appeal from the decision of a local governing body under N.D.C.C. § 28–34–01, our scope of review is the same as the district court's and is very limited. This Court's function is to independently determine the propriety of the [Board's] decision without giving special deference to the district court decision. The [Board's] decision must be affirmed unless the local body acted arbitrarily, capriciously, or unreasonably, or there is not substantial evidence supporting the decision. A decision is not arbitrary, capricious, or unreasonable if the exercise of discretion is the product of a rational mental process by which the facts and the law relied upon are considered together for the purpose of achieving a reasoned and reasonable interpretation.

*Grand Forks Hous. Authorities v. Grand Forks Bd. of Cnty. Comm'rs*, 2010 ND 245, ¶ 6, 793 N.W.2d 168 (internal citations omitted). "Such a standard of review ensures that the court does not substitute its judgment for that of the local governing body which initially made the decision."

*Hector v. City of Fargo*, 2009 ND 14, ¶ 9, 760 N.W.2d 108. In an appeal from a county board, "the record is adequate to support the findings and conclusions of the [board] if it allows us to discern the rationale for the decision." *Id.*

### III

[¶ 9] Dahm contends the decision of the County Board to deny his application for zoning change and preliminary plat was arbitrary, capricious, and unreasonable. Dahm asserts two main rationales why the County Board erred. First, he argues the County Board failed to adequately consider his application and the evidence he presented. Second, he argues two county commissioners had conflicts of interest which were founded on preference for their own land development projects and prejudice against Dahm's competing Duck Creek Estates project.

### A. Failure to Adequately Consider Evidence

[¶ 10] "On appeal from a decision of a county commission, a reconsideration of evidence is limited to the extent that such evidence was presented to the county commission, and the evidence must be reviewed in light of the commission's decision to determine whether that decision was arbitrary, capricious, or unreasonable." *Pulkrabek v. Morton Cnty.*, 389 N.W.2d 609, 613 (N.D.1986). The burden is on the moving party to show that the decision of the County Board was arbitrary, capricious, unreasonable or that there is no substantial evidence to support the decision. *Id.* "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Hanson v. Indus. Comm'n of N.D.*, 466 N.W.2d 587, 590 (N.D.1991).

[¶ 11] At the time Dahm's application was submitted and denied, a Stark County ordinance provided that "the county com-missioners of Stark County are hereby empowered to regulate the use of land, height and bulk of buildings, and areas of yards and lots." Stark Cnty. Zoning Ordinance, Art. I, § 1.02 (1983). The purpose of the ordinance was to "promote the public health, safety and general welfare of the people of Stark County, to secure the orderly development of the county, and to provide the sound and appropriate use of land." *Id.* at § 1.01. A new ordinance was enacted during the pendency of this appeal.

[¶ 12] The new ordinance requires all subdivision lots to be at least five acres, or 217,800 square feet. Under the old ordinance, serviced single-family, modular, or duplex lots were only required to be 7,000 square feet. Although Dahm contends the new ordinance will make his future zoning applications more "onerous," neither he nor the County Board argue that the new ordinance applies to the scope of this appeal beyond that fact. To that extent, the new ordinance does not apply to our analysis on the issue of whether the decision of the County Board was arbitrary, capricious, unreasonable or not supported by substantial evidence. *See Mini Mart, Inc. v. City of Minot*, 347 N.W.2d 131, 138 n. 4 (N.D.1984) (declining to take judicial notice of a new ordinance passed during the pendency of appeal because the parties did not brief or argue it applied).

[¶ 13] The old ordinance provided the procedural framework for applicants seeking to apply for zoning amendments. To apply for an amendment, the applicant needed to acquire an application from the zoning administrator, complete the application, and re-submit it. Stark Cnty. Zoning Ordinance, Art. IX, § 9.05. The administrator submitted the application to the Zoning Commission for review at their next scheduled public hearing. The Zoning Commission would then hold a public

hearing, review the amendment, and forward a recommendation to approve or deny the application to the County Board. Upon receipt of the recommendation, the County Board would approve or deny the application.

[¶ 14] In framing its zoning decisions, the Zoning Committee and County Board also looked to the Stark County Comprehensive Plan, a growth management policy established pursuant to N.D.C.C. § 11–33–03. The Plan was amended in 2010 based on the county's rapid growth in the agricultural and energy sectors. The Plan sets forth various aspirational goals for long term development. Key to this appeal is the goal of efficient land use; to "[a]ssure that the use of land is properly planned and compatible with adjacent land uses." To achieve this goal, the plan seeks to encourage the wise use of agricultural land, protect the agricultural integrity of rural areas, ensure orderly and desirable energy development, provide for proper growth management practices, and avoid conflicts between land uses. In accord with these objectives, the Plan also sets forth various implementation strategies including: prohibiting non-agricultural uses of flood plain areas; ensuring subdivision development programs do not create run-off, siltation, or conflicting uses for adjacent property owners; the establishment of rural subdivisions in accessible, easy to service areas; and providing that adequate water and waste disposal is available prior to subdivision approval.

 [¶ 15] In declining Dahm's application for a zoning amendment and preliminary plat approval, the County Board adhered to the established ordinance procedure for reaching a reasoned decision. Dahm obtained and submitted a zoning application. The application was reviewed by Planner Josephson. Josephson noted the plan conflicted with several goals and objectives of the Comprehensive Plan. The application was reviewed by the Zoning Commission. At least two public meetings were held. Dahm was allowed to speak in favor of the amendment while neighboring individuals from the Maryville Subdivision spoke out against the application. At the second meeting, commissioners questioned Dahm on several apparent deficiencies, including the impact on wetlands, whether there was adequate water and waste disposal, population density, and the impacts of increased traffic. Commissioner Hoff stated, "[w]ater, that's still a question . . . the water well there isn't even good enough for cattle anymore. . . . And the roads, we know most of the traffic is still going to come out at Maryville Subdivision. And how fair is that to intrude on another subdivision? I don't think it's fair." Commissioner Jackson stated "it still comes down to being a high density—higher density urban development out in the country, even if we end up being satisfied with the water, sewer, and the access."

[¶ 16] After reviewing the evidence, the Zoning Commission recommended a denial. In its official recommendation, the Zoning Commission stated "there continues to be concerns with density, traffic, and sewer and water issues for residential development of the property." Additionally, the Zoning Commission determined the application was inconsistent with at least four goals of the Comprehensive Plan:

1. LAND USE—Stark County supports subdivision designs that are compatible with the environmental characteristics of the site, as well as complement the location;

2. LAND USE—Stark County supports ensuring that adequate water and waste disposal are available prior to subdivision approval;

3. NATURAL RESOURCES—Stark County supports the preservation of open spaces and natural resources in private and public development;

4. TRANSPORTATION—Stark County supports the prohibition of non-farm development from being placed in a location that does not have a paved road or highway as its primary route of access to the development's local street system.

The County Board adopted these findings.

[¶ 17] The procedural compliance of the Zoning Commission and the County Board indicates that the decision to deny the application was not arbitrary, capricious, or unreasonable. This Court has previously stated that, where a zoning commission follows "steps, analysis, and hearings as required and denoted" in the ordinance, and where the decision is based on "reasoned and rational analysis of the issues underlying the amendments, including the nature of the surrounding property, the goals of the [County] in developing the area, and the breadth of the [applicant's] request," the decision is neither arbitrary, capricious or unreasonable. *Hector*, 2009 ND 14, ¶ 19, 760 N.W.2d 108. The procedure followed here characterizes an "exercise of discretion" that is the product of a "rational mental process by which the facts and the law relied upon are considered together. . . ." *Grand Forks Hous. Authorities*, 2010 ND 245, ¶ 6, 793 N.W.2d 168.

[¶ 18] With the "increased scrutiny of the cost of public services, changing economic trends, growing concern about the effects of land consumption, and energy development" in Stark County, county planners sought to "[a]ssure that the use of land is properly planned and compatible with adjacent land uses." The evidence in the record reflects the Zoning Commission's concern with population density was at odds with Dahm's proposal to create ninety-nine new residential lots. Given the goal of compatible land use, preservation of open spaces and natural resources, traffic control, and adequate water, the County Board did not act in an arbitrary, capricious or unreasonable manner in denying the application. Here, "the record is adequate to support the findings and conclusions" of the County Board because the decision allows this Court "to discern the rationale for the decision." *Hector*, 2009 ND 14, ¶ 9, 760 N.W.2d 108.

[¶ 19] Dahm also argues "[w]here a subdivision plat addresses all issues listed in a county's subdivision regulations the plat must be 'finally approved.' N.D.C.C. § 11–33.2–12." Dahm contends, "[o]nce the applicable regulations are complied with, it becomes the 'mandatory duty' of the zoning authority to approve a subdivision plat." Dahm argues he addressed each of the alleged deficiencies in his application, and the County Board must approve it. In determining whether a plat shall be approved or disapproved, the County Board shall:

> determine if appropriate provisions are made for the public health, safety, and general welfare, for open spaces, drainage ways, streets, alleys, other public ways, water supplies, sanitary wastes, parks, playgrounds, sites for schools and school grounds, but its determination is not limited to the foregoing. The board shall consider all other relevant facts and determine whether the public interest will be served by the subdivision. . . . If it finds that the proposed plat does not make appropriate provisions, or that the public use and interest will not be served . . . then the board of county commissioners shall disapprove the proposed plat.

N.D.C.C. § 11–33.2–12(3). The Zoning Commission and the County Board did take into account such factors as open

spaces, drainage, streets, water supplies, and waste disposal, in addition to other considerations, in denying the application. Because it found Dahm's application was at odds with the Comprehensive Plan, it was under no duty to approve the request.

[¶ 20] Dahm's argument that the County Board failed to adequately consider the evidence essentially urges this Court to re-weigh the evidence in favor of approval. He asserts the County failed to review the evidence and arbitrarily constructed new hurdles each time he appeared. However, in reviewing appeals from county boards, "the principle of separation of powers precludes parties from relitigating the correctness and propriety of the county commission's decision and prevents a reviewing court from sitting as a super board and redeciding issues that were decided in the first instance by the county commission." *Hagerott*, 2010 ND 32, ¶ 7, 778 N.W.2d 813. It is not the province of this Court to substitute its judgment for that of the County Board.

### B. Conflict of Interest

[¶ 21] Dahm also argues the denial was arbitrary and capricious because "the denial was founded on preference for [Commissioner Hoff and Elkin's] own projects, and prejudice against [his] competing project." Dahm alleges Commissioner Hoff purchased a large tract of land near Dickinson in August 2010, and sold a portion of the property to Roers Development in July 2012. Dahm asserts Roers Development intends to develop 1,000 acres, including land Hoff still owns, into commercial and high density residential lots in the vicinity of Dahm's proposed Duck Creek Estates project. Dahm contends Commissioner Elkin engaged in similar land and financial transactions with Bakken Shale Development, a company allegedly devel-

oping land in the vicinity of the proposed Duck Creek Project.

[¶ 22] Dahm did not raise the issue of a conflict of interest to the County Board. He attempted to introduce the evidence in the district court, but the court denied his motion. "On appeal from a decision of a county [board], a reconsideration of evidence is limited to the extent that such evidence was presented to the county [board]. . . ." *Pulkrabek*, 389 N.W.2d 609, 613 (N.D.1986). This Court has also held, "[t]he failure to raise the issue of judicial bias in the [district] court precludes our review on appeal." *Frueh v. Frueh*, 2009 ND 155, ¶ 20, 771 N.W.2d 593.

[¶ 23] Dahm argues he was at first unaware of the potential conflict, and that, even if he did have such knowledge, "it would likely not have been prudent for Dahm to address such issues at a public hearing. Such information would not have been received well, and would have made it even less likely that the Application would be approved." The County Board argues Dahm cannot use the appeal process to assert issues that should have been raised below. The County Board cites *Rakowski v. City of Fargo*, 2010 ND 16, ¶ 15, 777 N.W.2d 880, for the proposition that " '[o]ne of the touchstones for an effective appeal on any proper issue' is that the issue was properly raised below so that the original decisionmaker has a meaningful opportunity to make a correct decision and an adequate record is developed for appeal."

[¶ 24] Because the additional evidence Dahm seeks to admit is speculative in nature and was not presented to the County Board, we decline to reconsider such evidence here and we limit our review to the evidence that was presented to the County Board. *See Pulkrabek*, 389 N.W.2d 609, 613 (N.D.1986). We conclude the decision of the County Board to deny the applica-

tion was not arbitrary, capricious, or unreasonable, and there is substantial evidence to support the decision.

## IV

[¶ 25] Dahm argues the six-month restriction from appearing before the County Board was not only arbitrary, capricious, and unreasonable, it was also unconstitutional. Dahm alleges, because the new ordinance was passed during the six-month prohibition period, he is now forced to apply for an amendment "under the more onerous" new ordinance and its requirements for much larger subdivision lots. Dahm contends he purchased the Duck Creek Estates land "with the intent to subdivide the property and provide affordable single family housing in a 'quasi-rural' setting. Dahm did so in reliance on the original ordinance and subdivision regulations. Because the County Board's decision deprived Dahm of all reasonable use of the property, the decision constitutes an unconstitutional taking."

[¶ 26] Regarding the constitutional nature of Dahm's claim, this Court has previously held that, on appeal from a county commission decision under N.D.C.C. § 11–33–12, the moving party cannot turn an appeal from a denial of a change in zoning request into an inverse condemnation action. In *Gowan v. Ward Cnty. Comm'n,* 2009 ND 72, ¶ 11, 764 N.W.2d 425, this Court stated, "Gowan also claims the Commission's action has resulted in an unconstitutional taking of his property without just compensation. This is not an inverse condemnation action, but is an appeal from a decision of a local governing body.... Gowan cannot turn this appeal into an inverse condemnation action." Here, as in *Gowan,* we decline to address Dahm's claim on appeal that the County Board's decision resulted in an unconstitutional taking of his property. *See*

*also Hagerott,* 2010 ND 32, ¶ 24, 778 N.W.2d 813.

[¶ 27] The decision to implement a six-month appearance restriction was also not arbitrary, capricious, or unreasonable. In making its decision, the County Board noted that Dahm had presented the Duck Creek Estates project three months in a row without adequately resolving the issues of roads, sewage, water, and population density. As the district court reasoned, "the time and effort expended by the Stark County Zoning Board, the City and County Planner, and by the Stark County Commission persuades the Court that there was no violation of Stark County's authority and obligation to regulate land use ... by their decision to impose the six month prohibition." Here, given the repeated attempts to re-zone and the failure to make the requisite adjustments, it was not unreasonable for the County Board to implement a six-month wait period.

## V

[¶ 28] Dahm argues the district court erred in denying his motion to submit additional evidence. Dahm contends the district court should have allowed him to offer evidence not only pertaining to Commissioners Elkin and Hoff's alleged conflicts of interest, but evidence of similar residential subdivisions that were previously approved as well.

[¶ 29] Under N.D.C.C. § 28–34–01(3), a district court "may order that such additional evidence be taken, heard, and considered by the local governing body on such terms and conditions as the court may determine" if it is shown to the satisfaction of the court that "such additional evidence is material and that there are reasonable grounds for the failure to adduce such evidence in the hearing ... or

that such evidence is material to the issues involved and was rejected or excluded by the local governing body. . . ." "A district court's decision whether to order the taking of additional evidence under N.D.C.C. § 28–34–01(3) is discretionary." *Grand Forks Homes, Inc. v. Grand Forks Bd. of Cnty. Comm'rs*, 2011 ND 50, ¶ 8, 795 N.W.2d 381. "A trial court abuses its discretion in evidentiary rulings when it acts arbitrarily, capriciously, or unreasonably or if it misinterprets or misapplies the law." *State v. Ramsey*, 2005 ND 42, ¶ 8, 692 N.W.2d 498.

[¶ 30] The district court found that the evidence Dahm sought to admit was not "material evidence" or sufficient to reverse the County Board's decision. The court reasoned, "[d]ecisions made in regard to other subdivisions were made in relation to the unique characteristics of those parcels, the unique circumstances concerning the time, and other factors surrounding each application." The court found if such evidence were allowed, the entire record of allegedly similar projects would have to be included. The court further stated, "times change." When Dahm submitted his application, a new County Planner had been hired to review zoning amendments. "The Zoning Commission had more resources that allowed them to better examine an application and hold an applicant to a higher level of scrutiny." Additionally, the court found Commissioner Elkin and Hoff's alleged conflict of interest were not material. The court noted the Zoning Commission and County Board decisions were unanimous, and that Dahm did not provide a reasonable explanation for failing to present the bias evidence to the County Board.

[¶ 31] We conclude the district court's application of the facts and law was not arbitrary, capricious, or unreasonable. We agree with the analysis of the court that past zoning decisions do not necessarily reflect the realities of the current rapid growth in Stark County. In exercising its planning and zoning responsibilities, the County Board should learn from its past experiences and be allowed a reasonable time to make the necessary modifications to the zoning ordinances and County Comprehensive Plan before approving further applications that may be inconsistent with those modifications.

[¶ 32] Additionally, the court's finding that the alleged conflicts of interest should have first been introduced to the County Board and that the decisions of the Zoning Commission and the County Board were unanimous, also support the reasonableness of the court's decision. This Court has held, "[w]e do not believe the legislature envisioned nullification of a proceeding where a disqualified board member casts a non-determinative vote." *Klindt v. Pembina Cnty. Water Res. Bd.*, 2005 ND 106, ¶ 30, 697 N.W.2d 339. We conclude the district court did not abuse its discretion in denying Dahm's motion to submit additional evidence.

VI

[¶ 33] We affirm the judgment of the district court holding the County Board's decision to deny Dahm's application and institute a six-month appearance prohibition was not arbitrary, capricious, or unreasonable. We also hold the district court did not err in denying Dahm's motion to submit additional evidence.

[¶ 34] CAROL RONNING KAPSNER, MARY MUEHLEN MARING, DANIEL J. CROTHERS, and DALE V. SANDSTROM, JJ., concur.